## ˙Cadwalader's Appeal.

1. Trustees, of whom Chew, who was beneficially interested in the trust, was one, sold land to H. by articles, reserving minerals, &c. H. paid part of the purchase-money. Other trust lands had been sold with similar reservations. The court decreed a sale of the subjects of the trust remaining unsold, the trustees being allowed to bid. The trustees sold the lands and also the reservations in lands theretofore sold. The *tract* sold to H. was exposed and sold to Chew for a sum less than the balance due by H. *Held*, that Chew bought only the minerals, which had been reserved in the agreement with H.

2. As trustee, Chew knew of the sale to H. and his payment on account.

4. Although he was permitted to bid, he was bound to make a fair sale and act on his knowledge of the sale to H.

4. A trustee permitted to bid at his own sale, must act within the strictest line of his responsibility.

5. It was a breach of duty to sell the claim on H. and pay less for it than its actual value.

6. The permission to bid did not allow Chew to speculate on the trust.

February 21st 1870.   Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.   THOMPSON, C. J., at Nisi Prius.

Appeal from Nisi Prius: No. 65, to January Term 1868.

George Cadwalader, William Rawle and Benjamin Chew, Jr., were trustees under a decree of the Circuit Court of the United States of certain lands in Lycoming, Luzerne and Bradford coun-

ties. The land consisted of vacant and unimproved tracts, some of which were supposed to contain minerals. The trustees had made private sales of some of these lands, and reserved the minerals and mining privileges. They resided in Philadelphia, and transacted the business of the trust through Robert Faries, who resided in Williamsport, Lycoming county. On the 25th of May 1854, by articles of agreement executed for them by Mr. Faries, they contracted to sell to J. W. Heylman "part of tract No. 1758, containing 181 acres, reserving all minerals and mining privileges, for five dollars per acre, which the said J. W. Heylman hereby agrees to pay as follows, to wit: One-third part thereof cash on the first day of June next, with interest from the date of this agreement, and to give a bond and mortgage and warrant of attorney on the premises for the remaining two-third parts thereof payable, one-half thereof on the first day of June 1855, with the lawful interest from the date hereof, and the other half thereof on the first day of June 1856, with lawful interest."

Heylman, June 6th 1854, paid $300 on account of the first payment, a receipt for which by Mr. Faries, was endorsed on the articles.

On the 18th of March 1856 a petition on behalf of parties interested in the trust was presented to the Court of Common Pleas of Philadelphia, praying that the trustees should be required to sell the remaining subjects of the trust. A decree was accordingly made, and Benjamin Chew, one of the trustees, he being also beneficially interested in the trust, was allowed to bid at the sale. The property was advertised and exposed to public sale on the 24th of June then next, in two classes. The first class included or was designed to include all the lands intended to pass without the reservation of minerals: the second, those tracts " out of which mining and mineral privileges have been reserved," and also the mineral privileges which had been reserved out of lands previously sold. In the first class was included the 181 acre tract, sold to Heylman. This tract was sold to W. L. Marshall, Esq., attorney for Benjamin Chew, for $248.87. The order of sale was so returned, and on the 12th of July 1856 the sale was confirmed. On the 12th of November the trustees made a deed to Mr. Marshall, and he conveyed to Chew, April 1st 1857. The deeds to Marshall and Chew were both recorded in Lycoming county, October 20th 1859. On the 3d of October 1863, Heylman paid to Judge Armstrong, of Williamsport, attorney for the trustees, $346.05, on account of the purchase-money, the receipt for which was endorsed on the agreement and signed by Judge Armstrong as attorney for the trustees: In November 1865 Heylman called on Faries, who continued to act as agent of the trustees, and paid him $642.49, the balance of the purchase-money of the 181 acres with interest and demanded a deed. Faries had a deed prepared,

which contained no reservation of the minerals, &c., and sent it
to Philadelphia where it was executed by the trustees, returned to
Faries and by him delivered to Heylman. Heylman then endorsed
the following receipt on the agreement:

· "Received, Dec. 6th 1865, of Rawle, Cadwalader and Town-
send, trustees, &c., the deed made in pursuance of the within
agreement.　　　　　　　　　　　　　　　J. W. Heylman."

On the 9th of March 1868, the trustees filed a bill in the
Supreme Court of the Eastern District against Heylman and
the parties interested under the will of Chew.

The bill set out substantially the foregoing facts.

It further averred that in the sale under the decree of the
Court of Common Pleas, the 181 acre tract was accidentally in-
cluded and by mistake exposed to sale, and that after the sale to
Marshall, the clerk of the trustees informed Chew of the previous
sale to Heylman, but was told by Chew that Heylman had aban-
doned his contract, and that he would take the responsibility; that
subsequently Rawle and Chew two of his trustees died, and W.
H. Rawle and J. B. Townsend were substituted; that when Heylman
demanded the deed, Faries was ignorant of the deed to Mar-
shall; that Cadwalader was absent, and the other trustees who
executed the deed to Heylman were ignorant that before their
coming into the trust the 181 acre tract had been conveyed to
Marshall.

The bill then alleged that, by reason of the mistake in the
conveyance to Heylman and the mistaken or accidental sale to
Chew, the complainants may have rendered themselves liable on
some of the covenants in the said deeds contained, to which
liability they ought not, in equity, to be subject; and it further
alleged, that Chew purchased the said tract with the fullest
notice of the agreement with Heylman, and the only right which
he acquired was the right to the mineral privileges in said tract,
or the right to have his purchase-money returned to him; and
that the complainants have so offered to return the said pur-
chase-money.

The prayers were: 1. That the conveyance to Heylman be re-
formed, so that the same may conform to the original intention
of the parties, as expressed in the articles of agreement.

2. That the trustees and devisees under the will of Benjamin
Chew, may be decreed to release and confirm unto Heylman the
title to the said tract, reserving the minerals and mining privileges
as aforesaid.

3. That the deed to Marshall and from Marshall to Chew be
reformed, so as to embrace only the mines and mining privileges
remaining in the trustees after the execution of the articles of
agreement with Heylman.

[Cadwalader's Appeal.]

4. That the defendant Heylman release and confirm to the representatives of Chew the mines and mineral privileges in said tract, the complainants hereby offering to the said representatives of the estate of Benjamin Chew, deceased, the option to retain the said mining privileges in the said tract, or to receive from the complainants the amount paid by the said Benjamin Chew for the purchase thereof.

5. General relief.

The answers of the representatives of Chew disclaimed knowledge of any mistake in the sale last mentioned, and of the alleged conversation between Benjamin Chew, and the clerk of the trustees; denied that in November 1865, Robert Faries was ignorant of the conveyance from the trustees to Marshall; disclaimed knowledge of the last payment, made by Heylman to Faries; admitted that Chew had knowledge of the outstanding agreement with Heylman, but averred that Chew considered the said agreement cancelled, either in law or in fact.

They further averred that the agreement with Heylman is so tainted with gross negligence and laches on his part, that it could not have been enforced at the time the trustees made the deed to him in 1865; and also, that the right of Colonel Chew was not merely to have his purchase-money returned, but that he acquired all the right and title of the trustees in the said tract; and admitted the offer to return the purchase-money.

The answer of Heylman, averred willingness to give a bond and mortgage, as required by the said articles; that he went into possession of the 181 acres, under and in pursuance of the said articles, and made valuable improvements thereon; and that years before the conveyance of 1865 was delivered to him, he had demanded his deed, and offered to pay the balance of the purchase-money; that he the said Heylman accepted precisely such a deed as the trustees offered him. On December 6th 1865, he sold and conveyed the tract to E. M. D. Levan; and subsequent conveyances were made by Levan to other parties.

He denied that there was any mistake in the conveyance from the trustees to himself.

A replication was filed and an examiner appointed. George Bull, Esq., was appointed master.

The master amongst other things reported:—

* * * "When the trustees entered into the article of agreement with Heylman, they parted with the equitable estate, and Heylman could obtain from them the legal estate only by complying with his contract. He did not comply, and after the time had expired within which he had the right to tender a bond and mortgage, the trustees sold and conveyed the legal title to Benjamin Chew. This sale passed to Mr. Chew the legal title to this tract of land, minerals and all, subject to the equities of Heylman.

" Whenever Heylman or his assignees shall come forward and pay to the trustee or devisees of Benjamin Chew the balance of the purchase-money remaining unpaid at the date of the conveyance of the legal title to Chew, he will be entitled to a conveyance of the legal title called for by his article of agreement, if his equity has not been lost by his own laches, but not before.

" In the mean time, as defendant Heylman has not paid the balance of his purchase-money to the holders of the legal title, according to the terms of his contract, the latter are entitled to bring an action of ejectment for the land, and the payment made by Heylman to the trustees would be no defence to such a suit. At the time defendant Heylman made his payments to the trustees there were two deeds on record in the county of Lycoming, which were a standing notice to him and to all the world, that the trustees had parted with the legal title, and had no right to receive any portion of the unpaid purchase-money. At the time of the sale to Benjamin Chew, the trustees held the legal title as security for this purchase-money, and they had a perfect right to sell it, and having done so, their right to receive the money passed to their vendee, who took the title to the land subject to Heylman's equity." * * *

" What standing have the plaintiffs in a court of equity, to ask for a reformation of these two deeds? They sold nothing to Marshall but what they had a right to sell, and they conveyed nothing else. It is argued by the plaintiffs, and some evidence is produced to show that Chew had actual notice of the Heylman contract. But this does not vary the case. It is quite likely that Chew did know of it; being a party to it, he was visited with notice. He may have purchased with that contract in view, knowing that he would be entitled either to the unpaid purchase-money or the land. If he failed to obtain the purchase-money, he would pursue the land, and his right to do so cannot be questioned.

" No relief can be decreed under this prayer of the bill, because there is nothing whatever in Chew's deed that requires reformation. It is alleged, it is true, by the plaintiffs, that this 181 acre tract was included in the sale by mistake. The evidence to support this averment is not sufficient. But suppose it was proved, who was damaged by it? Not the trustees, because they received Chew's purchase-money, and executed a deed to him after they had full notice. It was the clerk of the trustees, who called Mr. Chew's attention to the Heylman contract, as appears by his testimony. Consequently they delivered the deed to Chew and received his purchase-money with open eyes, and it does not lie in their mouths to ask the interposition of a court of equity to relieve them from the consequences; particularly as the act was one from which no evil consequences were likely to flow. The representatives of Chew have suffered no damage, because their

[Cadwalader's Appeal.]

rights are unimpaired, and the conveyance having been accepted by Chew, and the purchase-money paid by him with full notice of Heylman's equity in the land, he, or his representatives, would be in no position to ask for a rescission of their contract, if they were not cut out by lapse of time. Heylman suffered no damage, because his position remained the same. He could have tendered the balance of his purchase-money to Chew, and demanded a deed, which Chew would have been bound to execute. He was placed in no worse position by the transfer to the legal title.

" As this case now stands, there is nothing in it requiring relief in equity. In effect, the plaintiffs are asking the court to do for them what they can easily accomplish themselves without the aid of any judicial act whatever. The plain road out of the difficulty is, for the trustees to tender to Heylman the purchase-money they have improperly received from him, and leave him and his co-defendants to their mutual remedies at law, which are complete and adequate. The only complication in the whole transaction arises from the mistake made by Heylman in paying his money to the wrong party." \* \* \*

The master reported that the bill be dismissed with costs.

After exceptions, the report was confirmed *pro forma* at Nisi Prius, and the bill dismissed with costs.

The plaintiffs appealed, assigning for error the decree of dismissal, and that the court did not make a decree according to the 2d and 3d prayers of their bill.

*G. T. Bispham* and *E. K. Price*, for appellants.—Chew could not buy at his own sale and speculate upon the trust property: Fox *v.* Mackreth, 1 Lead. Cas. in Eq. 92; Fisk *v.* Sarber, 6 W. & S. 18; Chorpenning's Appeal, 8 Casey 315; Beeson *v.* Beeson, 9 Barr 279. Chew was no a purchaser without notice; Heylman was in possession; Chew himself had been the vendor: Krider *v.* Lafferty, 1 Whart. 303; Billington *v.* Welsh, 5 Binn. 129. The interest of a vendor, under articles with unpaid purchase-money, is in some respects analogous to a mortgagee; the assignment of whose interest in the land without an assignment of the debt is of no use: 4 Kent Com. 186; Craft *v.* Webster, 4 Rawle 242.

*G. W. Biddle*, for appellees, submitted no paper-book, but referred to the master's report.

The opinion of the court was delivered, March 10th 1870, by

Agnew, J.—We think the master made a plain mistake of fact in his report on the evidence. He treats the public sale of the 181 acres, part of tract No. 1758, in Lycoming county, as a sale to Colonel Benjamin Chew, of the entire legal title; and thence infers the duty of Heylman, the former purchaser of the trustees

at private sale, to pay to Chew the unpaid purchase-money.   But it is impossible to close our eyes to the fact that the sale to Colonel Chew of the entire tract of 181 acres was founded in mistake, and was contrary to his duty as a trustee.   He was one of the three trustees who had sold this tract to J. W. Heylman by articles dated May 25th 1854, at $5 per acre, amounting to $905; reserving all the minerals and mining privileges.   On this contract Heylman had paid $300, June 6th 1854, and had entered into possession and made improvements.   It is not material whether Colonel Chew participated actively in the sale to Heylman or not.   As a trustee he knew or was bound to know of the sale, and payment on account of it.   The petition for the sale of the trust lands in 1856, prayed expressly for a sale of all of the subjects of the trust *remaining unsold;* and the decree of the court was made accordingly, and Colonel Chew was one of the trustees ordered to make the sale.   His being permitted, under the order of the court, to bid at the trustees' sale, to protect his beneficial interest in the subject of the trust, did not diminish his duty as a trustee to make a fair sale, or eradicate the knowledge to be imputed to him of the former sale of the trustees to Heylman.   A trustee, thus permitted to bid at his own sale, must act within the strictest line of his responsibility.   His character as a bidder cannot be permitted to derogate from his duty as a trustee.   The tract of land sold to Heylman did not fall within the purview of the petition and order of sale.   As to it conversion had already taken place, and the order was not intended to give an authority to resell it.   To comprehend it within the unsold lands was an evident mistake, excepting as to the minerals and mining privileges.   The claim on Heylman was for purchase-money, and the legal title was held in trust for him.   The whole sum of $605 unpaid and interest were available to the trust.   What sort of propriety would there be in permitting a trustee to bid in for himself the right to receive that sum belonging to his trust for the sum of $248.87?   It was a breach of duty to sell the claim on Heylman, and still worse to pay for it less than half of its actual value.   It is very evident that the permission to bid to protect his interest in the unsold lands, did not allow him to speculate thus on the trust confided to him.   To avoid such a conclusion against him, we are bound to believe the sale of the entire 181 acres was a mistake, as doubtless it was, by including the tract in the first class of lands wholly unsold, instead of the second class, consisting of the reserved mining rights.

The decree of the Court of Nisi Prius must be reversed, and a decree entered for complainants, with costs. Let a decree be drawn up reforming the deed to William L. Marshall, so as to confine its terms to the unsold minerals and mining privileges of the 181 acres

sold to Heylman, and confining to the parties claiming title under Colonel Benjamin Chew the sale of the said minerals and mining privileges in the said tract of land; or permitting them to surrender the deed to William L. Marshall, to be cancelled on a return to them of the purchase-money and interest paid by Colonel Chew on the sale to Marshall, costs to be paid by parties defending under said deed to William L. Marshall.