### In re MERTENS et al.

(Circuit Court of Appeals, Second Circuit. February 23, 1906.)

#### No. 60.

1. BANKRUPTCY—APPEAL—ORDER REJECTING CLAIM.

Where the creditor of a bankrupt, after the filing of the petition, sold securities which it held, credited the proceeds on its debt, and filed a claim for the balance due, an order disallowing such claim and directing a resale of the securities at public auction was one rejecting the claim, from which the creditor was entitled to appeal, under Bankr. Act July 1, 1898, c. 541, § 25a (3), 30 Stat. 553 [U. S. Comp. St. 1901, p. 3432].

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—PARTNERSHIP—CLAIM BY SECURED CREDITOR.

A creditor of a bankrupt partnership is not required to apply securities in his hands, which are the individual property of one of the partners, upon his claim against the partnership estate, but is entitled to the allowance of his debt in full against such estate, and to apply the securities upon his claim against the individual estate of the partner to which the property belongs.

3. PARTNERSHIP—TITLE TO PLEDGE—LIFE INSURANCE POLICIES.

The fact that insurance policies on the life of a partner and payable to his estate, either absolutely or contingently, were pledged as security for a debt of the partnership, is no evidence that they were the property of the partnership.

4. PLEDGES—SALE AND PURCHASE BY PLEDGEE—VALIDITY.

An agreement of pledge, made by one who subsequently became a bankrupt, authorizing the pledgee to sell the security pledged at public or private sale, with or without notice, and to purchase the same, is valid, and a sale made in accordance therewith at public auction, but without notice, and a purchase thereat by the pledgee, cannot be impeached by the trustee in bankruptcy of the pledgor, unless fraud or bad faith is affirmatively shown.

[Ed. Note.—For cases in point, see vol. 40, Cent. Dig. Pledges, §§ 169, 178–182.]

5. BANKRUPTCY—RIGHTS OF SECURED CREDITORS—DETERMINING VALUE OF SECURITY.

Under Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], which vests title to the bankrupt's property in his trustee as of the date of the adjudication, until such date a lienor or pledgee is at liberty to make any disposition of or perfect any title to the property which the nature of the lien permits, and where he has con-

verted the security into money pursuant to his contract rights, as permitted by section 57h (30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), he may prove the unsatisfied balance of his claim.

Appeal from the District Court of the United States for the Northern District of New York.

Appeal by the Varick Bank of New York from an order of the District Court, made as a court of bankruptcy, disallowing two claims which the bank sought to prove; one against the partnership estate of the bankrupts, and the other against the individual estate of Jacob M. Mertens, one of the partners.

F. M. Czaki, for appellant.
W. B. Crawley, for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The decision of the court below proceeded upon the ground that the bank was a secured creditor, for the value of two policies of life insurance upon the life of Jacob M. Mertens, and had sold the securities after the filing of the petition in bankruptcy, although prior to the adjudication, in disregard of the provisions of section 57, subd. h. of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]); and the order appealed from affirmed orders and rulings of the referee in bankruptcy refusing to allow the claims, and directing the value of the securities to be determined by the resale of them at public auction, upon notice to the trustee and the insurers, and the sum realized thereby to be applied in reduction of the claims.

We entertain no doubt that the order appealed from was, in substance and effect, a rejection of the claims such as to authorize an appeal pursuant to section 25 of the bankrupt act (30 Stat. 553 [U. S. Comp. St. 1901, p. 3432]) as well as a review pursuant to section 24 [U. S. Comp. St. 1901, p. 3431]. The bank insisted that its claims were for a definite amount, the amount stated in its proofs of debt less the sum which it had already derived from the sale of the securities. The decision not only disallowed these claims, but left the bank remediless, unless it should consent to allow a different reduction. It is true that, upon a resale, a larger sum might have been realized, and that the bank would have been a gainer by the event. But, if the balance which it asserted to be due was correct, it was entitled then and there to have its claims allowed for the amount specified, and to insist that it should not be exposed to the chances of a larger reduction.

The propriety of the disallowance of the claim against the partnership estate depends upon considerations which are peculiar to that claim and have no bearing upon the claim against the individual estate of Jacob M. Mertens. If the securities were not the property of the partnership when they were pledged to the bank as collateral for the payment of the indebtedness, the bank was entitled to have its claim against the partnership allowed, and allowed at its face without any deduction. If they were not part of the partnership assets, they were not part of the joint estate in bankruptcy, and as to that estate the bank was under no obligation to apply or realize their value in re-

duction of its claim. If they were the property of Jacob M. Mertens individually, and were pledged by him, the bank would have been at liberty upon selling them to apply the proceeds to the payment of his individual debt; and, no application having been made at the time, the settled rule of equity and of the courts of bankruptcy required the application of the proceeds in exoneration of the individual estate.

In the Case of Plummer, 1 Phillips, 56, the Lord Chancellor, in his opinion, said:

"In administration under bankruptcy, the joint estate and separate estate are considered as distinct estates; and accordingly it has been held that a joint creditor having a security upon the separate estate is entitled to prove against the joint estate without giving up his security, upon the ground that it is a different estate."

In Wilder v. Keeler, 3 Paige (N. Y.) 167, 23 Am. Dec. 781, Chancellor Walworth said:

"A creditor of a joint estate is always entitled to whatever he may obtain out of the fund in the hands of the surviving partner, without relinquishing his security against the separate estate of the deceased partner."

In Ex parte Whiting, 14 N. B. R. 307, Fed. Cas. No. 17,573, Judge Lowell said:

"When one partner has pledged his shares for the debts of the firm, proof may be made in full against the assets of the firm, because it is only when the proof is against the same estate which furnished security that a sale and application of the security is required by the bankrupt law."

Many other authorities might be cited to the same effect, but the doctrine is so well established that it would be superfluous to refer to them. The provisions of the present bankrupt act, requiring secured creditors to surrender preferences, and when the security is not preferential to have its value determined as a condition precedent to the allowance of their claims, have no application to cases in which the security was not the property of the bankrupt.

There was no evidence tending to show that the policies belonged to the partnership, except the circumstance that on one occasion the partnership made an agreement pledging them to the bank for the payment of a partnership note and all other liabilities to the bank which might thereafter arise. As the policies insured the life of Jacob M. Mertens, and were payable, one to him or his legal representatives, and the other to his wife or surviving children and to him in the event of their death before his, the legitimate presumption is that the title to one of them was his absolutely, and the title to the other was in his wife, his children, and himself. The circumstance that the partnership pledged them does not afford a scintilla of legal evidence that the title was in the partnership. There are instruments to which the title passes by delivery, such as notes and ordinary bonds for the payment of money. Possession of an instrument of this class is presumptive evidence of title, and the holder can recover in an action upon it by producing it upon the trial, without further evidence of title. But a policy of insurance does not belong to this class of instruments, and, because possession is not prima facie evidence of title, no recovery can be had by the holder upon it, when not payable to him, without proof

of an assignment. The agreement pledging the policies was not even moral evidence that they were owned by the partnership, because it appears that Jacob M. Mertens joined in it individually by a separate agreement executed contemporaneously and indorsed upon its back.

We conclude that the claim against the partnership estate should have been allowed in full.

The bank's claim against the individual estate was for an indebtedness of $9,118, the balance alleged to be due from Jacob M. Mertens, after crediting his account with the proceeds of the sale of the two policies which have been pledged to the bank as collateral for the payment of the indebtedness. The pledge was made long prior to the filing of the petition in bankruptcy, and it is not asserted that it was preferential. By its terms the bank was authorized, upon default in the payment of any part of the indebtedness, to "sell, assign, or otherwise dispose of the said collateral security at public or private sale, with or without notice to the pledgor," and to "purchase the whole or any part of the property sold free from any right of redemption" on the part of the pledgor. After the petition in involuntary bankruptcy, and on September 14, 1903, the bank caused the two policies to be sold by an auctioneer at a public salesroom, without any notice having been given to any person except its own agents. There was no competition at the sale, and, upon the bid of its own agent, the bank became the purchaser for the sum of $10,350. No testimony was offered by the trustee to show that the value of the policies was greater than the amount of the bid, and there is no evidence in the record of the value independently of the bid.

If this was such a sale as was authorized by the terms of the pledge, we do not doubt that the bank, in making it, was within its rights, and that no rule of the common law or doctrine of equitable jurisprudence, and none of the provisions of the bankrupt act, can be invoked to defeat or invalidate it.

Except for the terms of the pledge, the sale would have been avoidable; if for no other reason, because the bank purchased the policies. Story on Bailments, 319. But in this respect, as also with respect to a private sale without notice, the pledgor had by his contract consented in advance to that which was done by the bank. Indeed, by the stipulation of such a pledge as this was, the pledgor, in effect, commits the disposition of his property, in case of his failure to pay his obligation, practically to the honor of the pledgee, and releases the pledgee from all the legal obligations which would ordinarily rest upon him in disposing of the property to satisfy his demand. The authorities sanction such contracts. In Baker v. Drake, 66 N. Y. 518, 23 Am. Rep. 80, it was decided that the parties to a transaction, which creates the relation of pledgee and pledgor between them, may provide by contract for any manner of disposing of the pledge to satisfy any claim upon it, which is not in contravention of a statute, against public policy, or fraudulent. In Toplitz v. Bauer, 161 N. Y. 332, 55 N. E. 1059, the court said:

"In recent times the rights of the parties to enter into a contract providing for a sale or disposition without notice have been recognized, and the dis-

ability of the pledgee to become a purchaser, it is said, may be removed by express stipulation of the parties."

In Williams v. United States Trust Co., 133 N. Y. 660, 31 N. E. 29, where the terms of the pledge authorized the pledgees to sell the securities "in such manner as they in their discretion may deem proper, without notice," the sale without notice was upheld. In Fidelity Insurance Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 440, it was decided that the holder of collateral security for a debt, who had been given by the terms of the pledge full power and authority, on failure of the debtor to pay, to sell the collateral at public or private sale, and without advertising or giving the pledgor any notice or making any demand for payment, may buy such collateral, at a sale conducted in good faith, and thereby acquire a good title. The court said:

"It is undoubtedly true that, where a pledgee without authority sells negotiable collateral, he cannot become the purchaser; but this doctrine does not apply in a case like this, where the pledgee is given full power and authority, on the failure of the debtor to meet the obligation for which the collateral is given, to sell the collateral at public or private sale, and without advertising or giving the pledgor any notice or making any demand for payment. * * * It would be imposing great hardship and injustice upon the pledgee, under the circumstances of this case, to say that while acting under the authority given him by the pledgor, and in good faith, he shall be required to stand by and see the only security he has for the payment of his debt perhaps sacrificed, and he not permitted to protect his interests in the only way he can, by becoming the purchaser himself."

It will be noticed that in this case there was no stipulation authorizing the pledgee to become the purchaser. See, also, Manning v. Shriver, 79 Md. 41, 28 Atl. 899; Appleton v. Turnbull, 84 Me. 72, 24 Atl. 592; Chouteau v. Allen, 70 Mo. 290. It may happen that a pledgee will be unable to obtain from others the sum which he believes he may be able to realize from the property by purchasing it himself, and disposing of it when a favorable opportunity offers. If a pledgor sees fit to consent to a stipulation like those in this case, there would seem to be no reason why he should not be held to the contract.

The court below regarded the sale made by the bank as a fraudulent sale. There was no evidence of fraud, unless the facts which have been referred to justify the inference of fraud. We are at a loss to understand how fraudulent conduct can justly be imputed to a pledgee, when it appears that whatever was done in executing the power of sale was done in full compliance with the terms of the pledge, and when there is no evidence that any unconscionable advantage was taken of the pledgor or his creditors. Doubtless the pledgee cannot avail himself of his authority, however unlimited, to sacrifice the property wantonly, or to purchase it himself at a valuation so inadequate as to suggest a fraudulent purpose. If the valuation in this case was unfair, the burden was on the trustee to prove the fact.

The decision of the court below proceeded not only upon the ground that the sale was unwarranted by the terms of the pledge, but also upon the ground that, having been after the filing of the petition in bankruptcy, it was inoperative and subject to the supervision and con-

trol of the court, because the act suspends the exercise of the pledgee's remedy pending the adjudication of bankruptcy.

By the present act the title of the trustee is vested in the estate of the bankrupt "as of the date he was adjudged a bankrupt." We are of opinion that, until the date of the adjudication, a lienor or pledgee is at liberty to perfect any title which the nature of the lien permits. Under the act of 1867, no lien could be acquired after the filing of the petition in bankruptcy, because the title of the assignee vested as of the commencement of the proceeding in bankruptcy. Now the trustee takes the property of the bankrupt in the condition in which he finds it at the date of the adjudication, unless it has been incumbered fraudulently or in contravention of some of the provisions of the act. Under the former act, there were many decisions that a lien previously acquired could not be enforced subsequent to the commencement of the proceeding, except with the permission of the bankruptcy court. The Supreme Court, however, refused to sanction these decisions, and held that the lienor was entitled to perfect his title and enforce his rights as though no proceeding had been commenced. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Jerome v. McCarter, 94 U. S. 734, 24 L. Ed. 136. The change in the present act, by which the trustee's title is that only which exists at the date of the adjudication, removes any uncertainty which arose under the act of 1867. It was intended, we think, to permit all legitimate business transactions between a debtor and those dealing with him to be carried out and consummated as freely, until he has been adjudicated a bankrupt, as though no proceeding were pending. In many cases the proceeding against an alleged bankrupt is unfounded, and for this and other reasons never culminates in an adjudication. While the filing of a petition in bankruptcy is a caveat to all the world, the notice ought not to have the effect of paralyzing all business dealings with the debtor, or to prevent lienors or pledgees from enforcing their contracts. This is its practical effect, if the rights and remedies of all concerned are in suspense, until it can be ascertained whether an adjudication is or is not to follow the commencement of the proceeding. That Congress did not intend that lienors or pledgees should be prejudiced in enforcing their rights by the commencement of the proceedings in bankruptcy is indicated by the change made in the present act with respect to the proof of claims by secured creditors. By the former act it was provided that a secured creditor should be admitted as a creditor only for the balance of his debt, after deducting the value of the pledged property ascertained by an agreement between him and the assignee in bankruptcy, or by a sale under the direction of the court. Under that provision, if a pledgee sold the pledged property prior to the appointment of the assignee, or without the permission of the court, he was precluded from proving his claim or obtaining any share of the bankrupt's estate to which he would otherwise have been entitled. The present act provides that the value of his security may be determined, among other methods, by converting it into money pursuant to his contract rights, and thus, if he has enforced it as the contract with the debtor allowed, he is permitted to prove the unsatisfied balance of his claim. Section 57, subd. h, pre-

scribes several modes of valuation, and the one referred to is exclusive of the others and is superfluous and useless, unless it is intended to authorize the creditor, without interference by the trustee or the court, to value his own security, provided he turns it into money "according to the terms of the agreement pursuant to which" it was delivered to him.

We conclude that the claim against the individual estate should have been allowed for the balance claimed.

The order of the court below ·is reversed, with costs, and with instructions to proceed conformably with this opinion.