## In re ZOTTI.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

### No. 86.

BANKRUPTCY (§ 117*)—BANK DEPOSIT—PAYMENT OF CHECKS—LIABILITY TO TRUSTEE.

Where a bank paid checks drawn by a depositor in ignorance of the filing, late the day before, of an involuntary petition in bankruptcy against the depositor, and the receiver, who qualified on the day of the payment of the checks, made no demand for the depositor's funds until after the checks were honored, the trustee, subsequently elected, could not recover from the bank the amount paid on the checks, though Bankr. Act July 1, 1898, c. 541, § 70a, 30 Stat. 565 (U. S. Comp. St. 1901, p. 3451), vested in him, as of the date of the adjudication, the title of the bankrupt to the property which, prior to the filing of the petition, the bankrupt could have transferred.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 117.*]

Petition to Review Order of the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings against Frank Zotti, trading as Frank Zotti & Co. There was an order of the District Court (178 Fed. 304), reversing a referee's order directing the European-American Bank in New York to pay to the trustee the amount of checks, and Jesse Watson, as trustee, files a petition for review. Affirmed.

Rosenthal & Heermance (C. J. Heermance, of counsel), for petitioner.

Rollins & Rollins (Alfred A. Wheat and Beno B. Gattell, of counsel), for respondent.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. July 14, 1908, at about 4 p. m., a petition in involuntary bankruptcy was filed against Frank Zotti. July 15th Jesse Watson qualified as receiver. On the same day the European-American Bank of this city, without any actual notice of the filing of the petition, paid out of Zotti's deposit account, amounting to $6,046.68, checks to the amount of $2,190.70, of which a check for $2,000 was certified at 8:45 a. m. The receiver, having been subsequently elected trustee, made demand on the bank for the whole of Zotti's deposit, but the bank refused to pay over more than the balance remaining after deducting the checks paid as aforesaid to the amount of $2,190.70. In summary proceedings the referee ordered the bank to pay over this amount, with interest and costs, within five days, on the ground that the petition was a caveat attachment and injunction, of which the bank must be held to have had constructive notice, and any payment by it thereafter was invalid as against the trustee, and certified the following question:

"Is a bank, which has on deposit moneys belonging to one against whom a petition in bankruptcy has been filed, liable to the trustee in bankruptcy, subsequently appointed, for money which is paid out after the time of such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

filing, but without actual or personal notice of such filing, and on checks drawn by the depositor and delivered to the payee previous to such filing?"

Upon petition to review the District Judge, without passing upon the reasons relied upon by the referee, reversed his order, saying, among other things:

"Here the bank has not meddled with the bankrupt's assets at all. The property was, as I have said, a chose in action, to which it was an incident that the obligor should honor sight drafts. It did honor such a draft innocently, as all sides concede, and in so doing it availed itself of the conditions of the very obligation under which the trustee now sues. Of course, the trustee is subject to the same conditions when he sues as the bankrupt is under. One of these conditions is the right of the debtor bank to treat as a valid extinguishment pro tanto any payment made upon check."

Section 70a of the bankruptcy act of 1898 (30 Stat. 565, c. 541 [U. S. Comp. St. 1901, p. 3451]) provides that the title of the bankrupt shall vest in the trustee, as of the date of adjudication, inter alia, to (5) property which prior to the filing of the petition he could have transferred, etc. This latter language is intended to define the property which passes, viz., such as the bankrupt owned at the time the petition was filed. The indebtedness of the bank to Zotti was property which he could have transferred. Until the adjudication the title to it remained in him, and if no receiver had been appointed we can conceive no ground on which the trustee's present claim could be rested. As the court did appoint a receiver, it is to be presumed, in the absence of specific directions, that he was to hold as custodian, without title, for the purpose of preservation, and not for the purpose of distribution. The alleged bankrupt might never be adjudicated. The receiver did not demand Zotti's funds until after the bank had honored Zotti's checks, as it was bound to do without any notice of the filing of the petition. Payments after notice would no doubt be in contempt of the order appointing the receiver, but to require it to pay that sum over again to the trustee under the circumstances of this case would be in the highest degree inequitable.

The trustee founds his right entirely upon a remark of Chief Justice Fuller in Mueller v. Nugent, 184 U. S. 1, at page 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405:

"It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in effect an attachment and injunction (Bank v. Sherman, 101 U. S. 403 [25 L. Ed. 866]), and, on adjudication, title to the bankrupt's property became vested in the trustee (sections 70, 21e), with actual or constructive possession, and placed in the custody of the bankruptcy court."

Mr. Justice Peckham said in York Mfg. Co. v. Cassell, 201 U. S. 344, 353, 26 Sup. Ct. 481, 484, 50 L. Ed. 782:

"The remark made in Mueller v. Nugent, 184 U. S. 1 [22 Sup. Ct. 269, 46 L. Ed. 405], 'that the filing of the petition (in bankruptcy) is a caveat to all the world, and in effect an attachment and injunction,' was made in regard to the particular facts in that case. The case itself raised questions entirely foreign to the one herein arising, and did not involve any inquiry into the title of a trustee in bankruptcy as between himself and the bankrupt, under such facts as are above stated. The dispute in the Mueller Case was whether the court in bankruptcy had power to compel, in a summary way, the surrender of money or other property of the bankrupt in the possession

of the bankrupt, or of some one for him, without resorting to a suit for that purpose."

Whatever else the remark may mean, it cannot mean, in contradiction of the express provision of the act, that the title of the bankrupt shall vest in the trustee as of the time of filing the petition. The act of 1867 did so provide. Rev. Stat. U. S. § 5044. In the Matter of Mertens, 15 Am. Bankr. Rep. 362, 368, 144 Fed. 818, 75 C. C. A. 548, Judge Wallace, speaking for this court, said:

"By the present act, the title of the trustee is vested in the estate of the bankrupt 'as of the date he was adjudged a bankrupt.' We are of opinion that until the date of the adjudication a lienor or pledgee is at liberty to perfect any title which the nature of the lien permits. Under the act of 1867, no lien could be acquired after the filing of the petition in bankruptcy, because the title of the assignee vested as of the commencement of the proceeding in bankruptcy. Now the trustee takes the property of the bankrupt in the condition in which he finds it at the date of the adjudication, unless it has been incumbered fraudulently or in contravention of some of the provisions of the act. Under the former act there were many decisions that a lien previously acquired could not be enforced subsequent to the commencement of the proceeding, except with the permission of the bankruptcy court. The Supreme Court, however, refused to sanction these decisions, and held that the lienor was entitled to perfect his title and enforce his rights as though no proceeding had been commenced. Eyster v. Gaff, 91 U. S. 521 [23 L. Ed. 403]; Jerome v. McCarter, 94 U. S. 734 [24 L. Ed. 136]. The change in the present act, by which the trustee's title is that only which exists at the date of the adjudication, removes any uncertainty which arose under the act of 1867. It was intended, we think, to permit all legitimate business transactions between a debtor and those dealing with him to be carried out and consummated as freely until he has been adjudicated a bankrupt as though no proceeding were pending. In many cases the proceeding against an alleged bankrupt is unfounded, and for this and other reasons never culminates in an adjudication. While the filing of a petition in bankruptcy is a caveat to all the world, the notice ought not to have the effect of paralyzing all business dealings with the debtor, or to prevent lienors or pledgees from enforcing their contracts. This is its practical effect if the rights and remedies of all concerned are in suspense until it can be ascertained whether an adjudication is or is not to follow the commencement of the proceeding."

Of course, the trustee can after adjudication, and the receiver before, compel the surrender of assets in the possession of the bankrupt or of the alleged bankrupt or of any one for him. As to such persons the filing of the petition may be a caveat attachment and injunction. Mueller v. Nugent, supra, was just such a case. The bankrupt had presented to his son the proceeds of substantially all his property immediately before the petition was filed. In summary proceedings before the referee to make the son surrender these moneys he merely denied jurisdiction on the ground that he had received them before the petition was filed. After this objection was decided against him by the referee and by the District Judge on petition to review, he asked leave to amend by alleging that he had not received the moneys as agent of or bailee for his father, which was denied. Chief Justice Fuller said:

"The proposition was that, as matter of law, where property of a bankrupt has come into the hands of a third party before the filing of the petition in bankruptcy, as the agent of the bankrupt, and to which he asserts no adverse claim, the bankruptcy court has no power by summary proceedings to com-

pel the surrender of the property to the trustee in bankruptcy duly appointed. In other words, the question reduces itself to this: Has the bankruptcy court the power to compel the bankrupt, or his agent, to deliver up money or other assets of the bankrupt, in his possession or that of some one for him, on petition and rule to show cause? Does a mere refusal by the bankrupt or his agent so to deliver up oblige the trustee to resort to a plenary suit in the Circuit Court or a state court, as the case may be? It it be so, the grant of jurisdiction to cause the estates of bankrupts to be collected, and to determine controversies relating thereto, would be seriously impaired, and, in many respects, rendered practically inefficient. The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law."

We think this language was never intended to be applied to a bank which has honestly paid checks of a depositor without notice that any petition in bankruptcy has been filed against him and who may never be adjudicated a bankrupt at all. On the other hand, it would apply if the bank had refused to pay moneys which it had received prior to the filing of the petition and still had, or moneys which it had collusively transferred. It was because the act of 1867 threw doubt upon the validity of honest transactions between the filing of the petition and adjudication that the words "as of the date he was adjudicated a bankrupt" were inserted in the act of 1898. Collier on Bankruptcy (8th Ed.) p. 807.

The order is affirmed with costs.