### In re PERPALL.

(Circuit Court of Appeals, Second Circuit. January 12, 1921.)

#### No. 131.

1. **Bankruptcy ⊜=117(2)—Bankrupt may make valid transfer after filing of petition.**

   The title to a bankrupt's property remains in him until his adjudication, and a transfer of property by him after filing of the petition, but before adjudication, is not necessarily void.

2. **Bankruptcy ⊜=165(3)—Payment by bankrupt for value received at the time not a "preference."**

   Where bankrupt, a broker, on the day of the filing of his petition in bankruptcy, obtained delivery of bonds at his office by messenger on promise of cash payment, a check given in part payment on the same day,

though after filing of the petition, *held* not a "preference," under Bankruptcy Act, § 60a (Comp. St. § 9644), for preference implies paying or securing a pre-existing debt of a person preferred, and where one gives an insolvent person value for a transfer of property, or where he makes an exchange of property, there is no preference.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

Appeal from the District Court of the United States for the Southern District of New York.

In matter of Clarence C. Perpall, doing business as Clarence C. Perpall & Co., bankrupt, C. E. Welles & Co. appeal from an order of the District Court. Reversed.

See, also, 261 Fed. 858.

Austin, McLanahan & Merritt, of New York City (Scott McLanahan, of New York City, of counsel), for appellant.

Rosenberg & Ball, of New York City (David W. Kahn, of New York City, of counsel), for appellee.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Clarence C. Perpall, doing business as Clarence C. Perpall & Co., was adjudicated a bankrupt on the 15th of July, 1918, and a trustee in bankruptcy was subsequently appointed. This proceeding was begun by the filing of a petition by the trustee with the referee, praying for an order requiring C. E. Welles & Co., the appellant to pay over to the trustee the sum of $2,064, with interest from July 1, 1918. The members of appellant's firm are and have been members of the New York Stock Exchange, engaged in business as stock brokers, and had business dealings with the bankrupt. On July 1, 1918, the bankrupt owed the appellant $26,741.26 on one account, and $12,279.80 on another or special account. The appellant held, as collateral security, stocks and bonds, including $5,000 of the Chesapeake & Ohio Railroad Company Convertible 5's and $11,000 Southern Railway First Mortgage 5's.

On the morning of the bankruptcy proceedings, at 10 o'clock, the cashier of the bankrupt asked the cashier of the appellant to deliver to the bankrupt the above-mentioned bonds. Later, in compliance with this request, the bonds were delivered to the bankrupt. The messenger testified that he took these bonds and a memorandum to the office of the bankrupt and delivered them there at 10:30 o'clock. He was told to return at 11 o'clock and receive his check. He did so, and was then told to come back an hour later that the bankrupt would give the check in payment for the bonds. This was reported to the appellant, and a member of that firm went to the office of the bankrupt at 1 o'clock and demanded that he pay him $14,000 or return the bonds. It was then stated by the bankrupt's cashier that he could do nothing about the matter then, as he did not have the check or bonds. The member of the appellant's firm then talked with the bankrupt on the telephone and received a promise that he would "fix him up during the day."

At about 3 o'clock, the same member of appellant's firm talked with the bankrupt and was advised that there was a check at the bankrupt's office for him. The amount was not specified, but he immediately went to the office of the bankrupt and was handed a check for $2,064, made to the order of the bankrupt by another brokerage firm. It was not indorsed. It was then taken to the office of the bankrupt's attorney, where the bankrupt was, who indorsed it, and the check was then retained by the appellants. At 10 minutes past 3 that same day a petition in bankruptcy was filed. The bonds, after being received by the bankrupt, were immediately handed over to customers of the bankrupt, for whom bonds were bought by the bankrupt some months previous. A petition was filed by the trustee, praying for an order requiring the appellant to pay over to the trustee $2,064, with interest. It has resulted in the order appealed from.

[1] The court below held that the money transferred, having been paid over after the filing of the petition in bankruptcy, is not recoverable by the appellant because the transaction constituted a voidable preference under section 60 of the Bankruptcy Act (Comp. St. § 9644). But a transfer made by a bankrupt subsequent to the filing of the petition, is not necessarily void. It is merely voidable, if made under such circumstances as to constitute such transfer of preference to the transferee within the provisions of section 60a and section 60b of the Bankruptcy Act. In re Zotti, 186 Fed. 84, 108 C. C. A. 196, Ann. Cas. 1914A, 240. Until adjudication in bankruptcy, the title of the bankrupt's property remains in the bankrupt, and a valid transfer can be made by him. Johnson v. Collier, 222 U. S. 538, 32 Sup. Ct. 104, 56 L. Ed. 306; Matter of Mertens, 142 Fed. 445, 73 C. C. A. 561.

[2] Section 60a provides:

"A person shall be deemed to have given a preference if, being insolvent, he has * * * after the filing of the petition and before the adjudication * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

The Bankruptcy Act does not provide that any and all transfers made by the bankrupt subsequent to the filing of the petition and prior to the adjudication are absolutely void. The act provides that transfers may be voided by the trustee if they constitute a preference, and a preference is described by the act. It is only preferential transfers which are voidable. Preference implies paying or securing a pre-existing debt of a person preferred. Dean v. Davis, 242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. 419. Where one gives an insolvent person value for a transfer of property, where he makes an exchange of property, there is no preference. Ernst v. Bank, 201 Fed. 664, 120 C. C. A. 92.

Payment by the bankrupt on the day of the filing of the petition was, in effect, a cash transaction, and was in return for an adequate consideration received by the bankrupt at the time. The delivery of the stock and the receipt of the check on the same day should be regarded as one transaction. The fact that a few hours transpired, and

they could not be said to be literally contemporaneously made, was because of the nature of the business transacted and the practice that prevailed as the custom of this business. We held In re Perpall (Hammerslough) 256 Fed. 759, 168 C. C. A. 104, that the seller of a bond did not waive payment as a condition precedent to passing title where his messenger delivered a bond to a broker, and another messenger, according to the usual business custom, called to receive payment a few hours later, after allowing time for the broker to make entries, execute a check, and make a record of the transaction.

We there affirmed an order sustaining the finding that the title did not pass until payment. We think that we are controlled by this authority, and on the facts as found in this record the order below was erroneous.

Order reversed.