## In re LATEX DRILLING CO.

(District Court, W. D. Louisiana, Shreveport Division. January 3, 1926.)

No. 2397.

1. **Bankruptcy ⬥293(4)—Rights to proceeds of oil as between claimant, who did development work before adjudication, and trustee, held question arising in bankruptcy of which court had jurisdiction, where all parties voluntarily appeared (Bankruptcy Act § 23, as amended, and section 70a [Comp. St. §§ 9607, 9654]).**

Where development work on oil lease was done under contract after filing of involuntary petition in bankruptcy against owner, but before adjudication, *held*, controversy whether part of proceeds of oil produced, in hands of purchaser—stakeholder, belonged to trustee or to claimant, who did work, was one arising in bankruptcy, of which bankruptcy court under Bankruptcy Act 1898, § 23, as amended (Comp. St. § 9607), and section 70a (Comp. St. § 9654), had jurisdiction to determine; all parties having voluntarily appeared.

2. **Bankruptcy ⬥172—Assignment of part of proceeds of oil to claimant, who did development work after filing of petition, held good as against trustee.**

Where, after filing of involuntary petition in bankruptcy against owner of oil lease, but before adjudication, beneficial development work was done and an assignment of part of proceeds of oil produced, which was in hands of purchaser, was given by owner and state court receiver to claimant, who did the work, *held*, as against trustee, assignment was good, and claimant is entitled to payment.

In Bankruptcy. In the matter of the bankruptcy of the Latex Drilling Company. On a petition of Edwin M. Jones to review and revise a ruling of the referee as to disposition favorable to the trustee of certain funds arising from development of oil land and held by the Standard Oil Company. Judgment of referee revised and reformed in part; otherwise, affirmed.

T. Overton Brooks and Cecil Morgan, both of Shreveport, La., for bankrupt.

Pugh & Boatner, of Shreveport, La., for Intervener Oil City Iron Works.

J. Fair Hardin, of Shreveport, La., for defendant.

DAWKINS, District Judge. This matter comes before the court on a petition to review and revise the ruling of the referee as to the disposition of certain funds arising from the development of an oil lease belonging to the bankrupt under contract with the claimant, made and performed after the filing of the petition but before adjudication in bankruptcy. The facts do not appear to be disputed, and since the report of the referee gives in part a statement of the case, I quote therefrom as follows:

"On March 14, 1924, an involuntary petition was filed praying that the Latex Drilling Company be adjudged a bankrupt. On March 29, 1924, an answer was filed denying that it had committed an act of bankruptcy. The Latex Drilling Company had been placed in the hands of a receiver by order of the First district court of Caddo parish, La. Its principal assets consisted of an oil and gas lease located in Union county, Ark. The jurisdiction of the First district court did not extend to nor include the property located in Arkansas. Delays occurred, and it was not until May 6, 1925, that the Latex Drilling Company was adjudged a bankrupt. In the meantime the oil and gas lease located in Union county, Ark., was developed, and it produced considerable oil. The oil taken from said lease was delivered to the Standard Oil Company, who now has in its possession the sum of $7,847.07, which is claimed by the trustee of the Latex Drilling Company; the same being the value of seven-sixteenths of production taken from the Latex Drilling Company's Arkansas lease.

"A rule was issued by your referee, citing the Standard Oil Company to show cause why said sum should not be paid to the trustee. The Standard Oil Company filed an answer, setting up that garnishment proceedings had been served upon it, and that liens had been asserted against said fund, and that it held an order to pay over a portion of said fund to Edwin Jones, which facts are more specifically shown in the answer.

"The Standard Oil Company further prayed that the several parties laying claim to the fund be cited and made a party to this rule. By order of your referee, all parties were made defendants in this rule. All parties were served except J. B. Tierce, who could not be found, and service was made upon his attorneys, who had filed the garnishment proceedings, namely, Powell, Snead & Knox, of El Dorado, Ark. The only appearance made by the said defendants in rule was by Edwin M. Jones. This defendant, Edwin M. Jones, filed an opposition, seeking to prevent the payment by the Standard Oil Company to the trustee of the amount in its hands. After due hearing before your referee, an order was entered directing that the Standard Oil Company pay over the said sum of money in its hands to the trustee, and that all liens resting on said fund be preserved and referred to the proceeds in the hands of the trustee."

While the Standard Oil Company excepted to the ruling of the referee and also filed a petition for review thereof, the same has since been withdrawn, and the only issue left for my determination is the one between the trustee and the opponent, Edwin M. Jones.

In addition, the undisputed testimony of Jones, supported in part by an order signed by the receiver of the state court, and by the president of the Latex Drilling Company, bankrupt, is that he, with the aid and assistance of others, drilled upon the property covered by the lease in Arkansas, between the date of filing the petition and the adjudication, two producing wells from which the oil, the proceeds of which are in controversy here, was produced. Since that time the trustee has disposed of this lease at a price of $30,000, and which indicates that the estate was greatly benefited by the work of Jones, the claimant. This work was done under a verbal contract with the officers of the bankrupt company, and the amount earned thereunder, according to Jones (which as above indicated is not disputed), was $14,277.15, of which $4,702.36 was paid before the adjudication.

As stated by the referee, Jones opposed the rule of the trustee for the payment by the Standard Oil Company (who was merely a stakeholder) of the funds in its hands to the trustee, on the ground that, before adjudication and while the property and affairs of the Latex Drilling Company were still in the hands of a receiver in the state court for Caddo parish, and of the company itself, this money was earned, and the order above referred to upon the Standard Oil Company for amounts aggregating $6,814.46 had been given to the opponent, thereby creating a valid assignment of said funds for value presently received, and divesting the Latex Drilling Company of any interest therein, before it was adjudged a bankrupt. Opponent also contends that the oil produced from the lease (in the light of the jurisprudence of the Supreme Court of Louisiana, holding that there can be no ownership in oil in the ground separate from the soil until reduced to possession) is in the nature of after-acquired property, which did not fall into the bankrupt estate. On the other hand, the trustee claims that the adjudication related back to the time of filing the petition and vested in the estate all of the bankrupt's property as of that date, including the proceeds of the oil arising from the development of this lease. This is the effect of the holding by the referee which orders the payment of the funds by the Standard Oil Company over to the trustee, reserving the rights of all persons to assert their claims thereon. However, Jones insists with much force that since he was not a creditor of the bankrupt at the time of filing the petition, he would have no standing to prove a claim as such against the estate; that unless his rights are determined in this proceeding, he will be left without remedy, and the bankrupt estate or its creditors will be enriched by his labors, to his great loss and injury; and that his claims cannot be treated as costs of administration, because the work was done and the material furnished after the filing of the petition and before adjudication under an agreement with the company and its receiver, without authority or intervention of any officer of the court, or other lawful representative of the estate.

Section 70a of the Bankruptcy Code (quoting pertinent portions thereof) provides as follows:

"a. The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their ap-

pointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt, *as of the date he was adjudged a bankrupt*, except in so far as it is to property which is exempt, to all (1) documents relating to his property; (2) interests in patents, patent rights, copyrights, and trademarks; (3) powers which he might have exercised for his own benefit, but not those which he might have exercised for some other person; (4) property transferred by him in fraud of his creditors; (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." (Italics by writer of this opinion.)

"e. The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. *For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.*" Comp. St. § 9654.

It is thus seen that contrary to the former Bankruptcy Acts, the statute of 1898 vests the trustee with title to the bankrupt's property *as of the date of adjudication,* instead of from the filing of the petition or commencement of proceedings. It is true that in the fifth enumeration of property which passes is embraced "property which prior to the filing of the petition he (the bankrupt) could, by any means, have transferred or which might have been levied upon and sold under judicial process against him"; but this seeming conflict is readily reconciled by holding that the lawmaker intended to subject to the administration of the bankrupt court everything within the class mentioned which had not been lawfully disposed of prior to adjudication. The change was made to overcome the confusion which had arisen under the old law. Collier on Bankruptcy (13th Ed.) vol. 2, p. 1635, and authorities cited in the footnotes. This permits the bankrupt, in the interim between the filing of the petition and adjudication (which often covers a period of months, especially in involuntary proceedings like the present case), to continue his business and to make bona fide contracts so long as no creditor is preferred and no fraud or hardship is worked upon the estate. As to those transactions, the trustee, after his qualification, steps into the shoes of the bankrupt. If the creditors desire to deprive the bankrupt of the right so to deal with his property, they may, upon proper showing and proceedings, such as attachment or appointment of a receiver, do so. Id., p. 1637; also, pages 1639–1641, and authorities cited. See, also, Remington on Bankruptcy, vol. 4, pars. 1393–1401, pp. 20–33; Johnson v. Collier, 32 S. Ct. 104, 222 U. S. 538, 56 L. Ed. 306.

[1] In circumstances like the present case, I think the opponent falls into the category of an adverse claimant, and the controversy becomes one arising *in* bankruptcy, as distinguished from those growing *out of* bankruptcy and as to which the jurisdiction of the court is determined according to general rules and particularly section 23 of the Bankruptcy Act (Comp. St. § 9607). If the defendant be in possession of the property or funds which he claims and it is found that he has colorable title thereto, he has the right to insist that he be sued at his domicile, in a proper court, state or federal. And I think the conditions are analogous where the funds are held by a third person who asserts no interest therein save the desire to pay them to the one lawfully entitled to receive them. In this case, however, all parties have voluntarily appeared in the present proceeding, and raised no question except as to who is entitled to receive the money. Section 23, Bankruptcy Act of 1898, as amended; In re Zotti, 186 F. 84, 108 C. C. A. 196, Ann. Cas. 1914A, 240, certiorari denied 32 S. Ct. 522, 223 U. S. 718, 56 L. Ed. 628; In re Perpall (C. C. A. 2d Cir.) 271 F. 466; Home Ins. Co. v. Gunther (C. C. A.) 298 F. 595; Taubel-Scott-Kilzmiller Co. v. Fox et al., Trustee, 44 S. Ct. 396, 264 U. S. 426, 68 L. Ed. 770.

It has also been held that the claimant may waive his right to a plenary action, surrender the property to the trustee, and assert his claim to the proceeds in the bankruptcy proceedings. In re Plymouth Elevator Co. (D. C.) 191 F. 633.

[2] Having reached the conclusion that this court, under the state of the record, may decide the controversy between Jones and the trustee, I now turn to the question of the former's claim. The contract for drilling the wells was one to be executed in the state of Arkansas. There is nothing before me to

376 FEDERAL REPORTER, 2d SERIES

show that Jones, under the law of that state, acquired any lien or privilege against the oil or its proceeds, which was produced from the wells which he had drilled. However, the corporation, together with the receiver of the state court, before adjudication, executed in his favor, as heretofore stated, an assignment of these funds to the amount of $6,814.46, which assignment he accepted and which, but for the interposition of the claims of other persons, not now being asserted before this court, no doubt would have been paid by the Standard Oil Company to Jones. This assignment was in payment for work done upon the property of the bankrupt, which has inured to the benefit of the estate, and I think should be recognized and enforced.

For the reasons assigned, the judgment of the referee is revised and reformed to the extent that the said Edwin M. Jones shall be and he is hereby held to be entitled to receive out of the funds held by the Standard Oil Company, amounting to $7,847.07, the sum of $6,814.46, which latter amount the said company is ordered to pay over to the said Jones, and the remainder thereof to deposit with the trustee in accordance with the ruling of the referee; otherwise, the ruling of the referee is affirmed and made the judgment of this court.