## In re RETAIL STORES DELIVERY CORPORATION.

District Court, S. D. New York.
April 30, 1935.

Oppenheimer, Haiblum & Kupfer, of New York City (Eli S. Silberfeld, of New York City, of counsel), for trustee.

Shearman & Sterling, of New York City (Carl A. Mead and Justus Sheffield, both of New York City, of counsel), for respondent Nat. City Bank of New York.

GODDARD, District Judge.

Judge Patterson found that all of the $7,226.29 deposited by the bankrupt with the respondent bank after the filing of the petition in bankruptcy and before adjudi-

659

cation, with the exception of $1,330, was new money not belonging to the estate and came from loans obtained by the bankrupt and from compensation received for services performed by the bankrupt after petition filed. (D. C.) 5 F. Supp. 892. He held that therefore this court had no jurisdiction over any part of the fund except possibly this $1,330, and referred the matter back to the referee to take further testimony and to report as to the source of this $1,330. The referee found that only $860.01 of this $1,330 was money to which the bankrupt estate was entitled at the time petition filed. But the referee declined to grant a turnover order for this $860.01 on the ground that it was not actually in the possession of the bankrupt at the time of the filing of the petition. However, I think the fact that it was not actually in the possession of the bankrupt at that time makes no practical difference; it was part of the proceeds of rebates on insurance policies belonging to the bankrupt estate, and, when collected, formed part of that estate. See In re Times Square Auto Supply Co., 47 F.(2d) 210 (C. C. A. 2).

As I see it, the question now to be decided is whether the bank has a defense on the merits to a turnover order. I think it has. Although the bank knew that a petition in bankruptcy had been filed, after it was filed the account on deposit with it was closed out and new deposits amounting to $7,226.29 were made by the bankrupt, and the bank was not aware that any of this fund belonged to the bankrupt estate. No restraining order had been served upon it, nor was a receiver in possession of the bankrupt estate. The bank received the deposits and honored checks against them in its ordinary course of business. It is not claimed that the bank received a preference, nor that this $860.01 went to make a preferential payment. The proof is that the business was carried on by the bankrupt after the filing of the petition and that the greater part of the money deposited in the bank, after the filing of the petition, came from temporary loans obtained and used for the purpose of meeting pay rolls and other necessary disbursements in continuing the business, and there is no proof that all of the money withdrawn was not so used.

While it is true that the proceeds of a check for about $1,500 were delivered by the bankrupt to some one connected with the bank to deliver to that person's wife to repay a loan she had made to bankrupt, the record indicates no lack of good faith on the part of the bank's representative in cashing this check or at any time; it was paid in the ordinary course of business and under similar circumstances as the other checks drawn on this account had been paid.

There are several cases holding that a bank is not liable when in good faith, in the ordinary course of business, it pays checks drawn by a concern against which, unknown to the bank, a petition in bankruptcy has been filed, with no restraining order outstanding and prior to adjudication. In re Mertens, 144 F. 818 (C. C. A. 2); Citizens' Union National Bank v. Johnson, 286 F. 527, 31 A. L. R. 255 (C. C. A. 6); In re Perpall, 271 F. 466 (C. C. A. 2); In re Fuller, 294 F. 71 (C. C. A. 2); In re Zotti, 186 F. 84, Ann. Cas. 1914A, 240 (C. C. A. 2); Stevens et al. v. Bank of Manhattan Trust Co., 11 F. Supp. 409, opinions of Judge Caffey, 10/19/31; 11/30/31; see, also, Collier on Bankruptcy (13th Ed.) p. 1639 et seq.; Remington on Bankruptcy §§ 1390 and 1393.

Most of these cases base the denial of a turnover order upon the ground that the bank in question was unaware that a petition in bankruptcy had been filed, and it was held that under such circumstances it would be inequitable and impractical to make the bank refund to the trustee the amount of such checks paid by it; otherwise, a bank could never pay a check without first ascertaining whether a petition in bankruptcy had been filed against the one who drew the check. For similar reasons, it seems to me that a bank should not be held liable if, in the ordinary course of business and in good faith, it honors a check against funds which the bank does not and has no reason to know are part of a bankrupt estate. Funds on deposit with a bank at petition filed have a different status from funds which may be deposited with the bank later. As an instance of this, a bank does not have the right to set off against an indebtedness to it money deposited by a bankrupt after the petition in bankruptcy. Reed v. Barnett National Bank of Jacksonville, 250 F. 983 (C. C. A. 5).

In the case at bar the bank recognized the right of the depositor of funds to withdraw them in the absence of notice to the contrary. The relationship of the depositor and the bank was that of debtor

and creditor. The general obligation of the bank was to honor its depositor's checks. Reed v. Mattapan, Deposit & Trust Co., 198 Mass. 306, 84 N. E. 469; Central National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693.

█ In cases cited above, where the court has refused to grant a turnover order, the court has stressed the fact that the banks did not know that a petition in bankruptcy had been filed against the drawer of the check. But I think such payments, at least the one in the case at bar, may be defended on another ground, for while the filing of the petition in bankruptcy is a caveat to all the world and in effect an attachment and injunction and the property is in custodia legis for jurisdictional purposes (Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157), until adjudication the title of the bankrupt's property remains in the bankrupt and a valid transfer can be made by him (Johnson v. Collier, 222 U. S. 538, 32 S. Ct. 104, 56 L. Ed. 306).

█ The filing of an involuntary petition does not ipso facto take from an alleged bankrupt his domain over his property in the absence of restraining orders or the appointment of a receiver, but any transfer by him of the property may be invalidated except it be for full value in good faith and in the ordinary course of business Unless the situation is altered by the appointment of a receiver or by restraining order, the bankrupt's property is held by him as trustee for creditors. See Collier on Bankruptcy (13th Ed.) p. 1637, and cases cited.

In Re Zotti, 186 F. 84, Ann. Cas. 1914A, 240 (C. C. A. 2) it was stated that the Bankruptcy Act does not provide that all transfers made by a bankrupt subsequent to the filing of the petition and prior to adjudication are void; and that such transfers may be voided by the trustee only if they constitute a preference.

█ Counsel for the trustee seems to take the position that upon the filing of a petition in bankruptcy the alleged bankrupt is thereby incapacitated from continuing its business; that all are forbidden from transacting business with it; and that its affairs are completely suspended until a custodian, receiver, or trustee is appointed, or the petition dismissed. I do not believe that the mere filing of a petition in bankruptcy imposes such drastic restrictions upon the operations of the alleged bankrupt. Other and adequate means for protecting the estate for the creditors, if necessary, are provided by the Bankruptcy Act (11 USCA).

█ In the case at bar the bank received no preference. It was a transaction in the ordinary course of business. It merely returned to the bankrupt funds delivered to the bank thereby, of course, giving full present consideration.

For the above reasons, I think the order of the referee refusing to grant a turnover order should be affirmed.