**Julius KASS, Respondent-Appellant,**

v.

**Lester T. DOYLE, Trustee in the Reorganization of the Third Avenue Transit Corporation, Petitioner-Appellee.**

**No. 126, Docket 25777.**

United States Court of Appeals
Second Circuit.

Argued Jan. 8, 1960.

Decided March 3, 1960.

John A. Kiser, New York City (Daniel J. Driscoll and Saxe, Bacon & O'Shea, New York City, on the brief), for petitioner-appellee.

David Brady, New York City (Julius Kass, Erwin Cherovsky and Bandler & Kass, New York City, on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Julius Kass appeals from a decision and order of Judge Dimock directing him to turn over to Lester Doyle, trustee in the reorganization of the Third Avenue Transit Corporation and its subsidiaries, a legal fee of $3,000 with interest, paid him on June 17, 1949. The fee was received a few days prior to approval of the petition for reorganization for services rendered as labor relations counsel primarily in the interval between the filing of the petition for reorganization and its approval. The principal question for decision is whether Kass' services constituted "present fair equivalent value" for the fee paid him within the meaning of § 70, sub. d(1) of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. d(1). We conclude that they did and accordingly reverse the judgment of the district court.

In August 1948 Kass was retained by the Third Avenue Transit Corporation at a monthly fee of $625 to act as labor relations counsel for the corporation and its subsidiaries. From then until June 1949 Kass performed services for the corporation in connection with its labor problems, devoting particular attention to a lengthy grievance arbitration proceeding. He received no payment until June 17, 1949, at which time he was paid $3,000 of the $6,875 then due him for the eleven months from August 1948 through June 1949; he has never been paid the remaining amount. Meanwhile, on October 25, 1948 an involuntary petition for the reorganization of Third Avenue under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., had

been filed by three of its creditors. The petition was amended in December 1948 and finally approved by the court on June 21, 1949. By stipulation between Kass and the trustee the determination of the former's right to retain the $3,000 was postponed for some years. On January 20, 1958 the district court ordered Kass to show cause why he should not be required to turn over the $3,000 to the reorganization trustee. At the hearing there was conflicting evidence introduced whether Kass knew of the filing of the petition against the corporation and whether he had reasonable cause to believe that the petition was not well founded when he received the payment in June 1949. However, the trial judge did not reach the issue of Kass' good faith under § 70, sub. d, since he concluded that the "present fair equivalent value" requirement of the statute was not met.

Section 70, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. a, provides that the trustee shall be vested with title to the nonexempt property of the bankrupt "as of the date of the filing of a petition initiating a proceeding." From that time forth transfers of property by the bankrupt, generally speaking, are invalid and the trustee may recover the property transferred. Section 70 sub. d, enacted as part of the Chandler Act in 1938, provides certain exceptions to this general rule, enumerating protected transactions that may be effected by the asserted bankrupt during the interval between the filing of the petition and the adjudication of bankruptcy or the taking of possession by a receiver. So far as here pertinent, § 70, sub. d(1) states that "a transfer of any of the property of the bankrupt * * * made to a person acting in good faith shall be valid against the trustee if made for a present fair equivalent value * * * "

■ The phrase "present fair equivalent value" contains three separate requirements, all of which must be met before the transfer may be held to be valid. The exchange of consideration must be "present," it must be for "value," and

the value must be a "fair equivalent" for the property transferred by the bankrupt. Here there is no dispute as to the last of these; the trustee does not question that $625 per month was a reasonable fee for Kass' services. However, the trustee does contend that the services performed by Kass did not constitute "present" value, since they were performed over a period of months preceding the moment of payment. In effect the trustee would have us read the word "present" as equivalent to "simultaneous." Second, he says that services by their very nature are not "value"—that "value" refers only to tangible property or instruments evincing rights in property.

■ The requirement that the exchange be "present" is satisfied if the exchange takes place at any time during the interval between the filing of the petition and the adjudication of bankruptcy. The purpose of the statutory requirement is to protect the estate of the debtor from depletion during the pendency of the petition, while permitting persons to carry on normal business affairs with the bankrupt without fear of a later suit by the trustee to recover property transferred by the bankrupt for full value. Analysis of H.R. 12889, 74th Cong., 2d Sess. 229–30 (1936); see MacLachlan, Amendment of the Bankruptcy Act, 40 Har.L.Rev. 583, 614–16 (1927). Whether the transfer of value to the bankrupt precedes or follows the receipt of consideration from him, or the two occur simultaneously, does not affect the fulfillment of the statutory purpose, so long as the consideration upon both sides passes during the pendency of the petition and there is no diminution of the debtor's estate. Where, as here, performance of the transferee's obligation to the bankrupt must from its very nature take place over a period of several months, to insist that the transferee receive payment on a daily or weekly basis rather than in a lump sum at the termination of the contract would be mere formalism contrary to the reason of the statute. See In re Perpall, 2 Cir., 1921,

271 F. 466, 468, 469. Moreover, to require legal services to be paid on a daily or weekly basis would be exceedingly impractical.

In our opinion, full effect is given to "present" as it appears in § 70, sub. d if it is construed to exclude liquidation of an antecedent debt from those transactions protected by the section. See, e. g., Lehman v. Cameron, Sup.1955, 207 Misc. 919, 139 N.Y.S.2d 812. Under the Uniform Fraudulent Conveyances Act liquidation of an antecedent debt—one arising prior to the date of insolvency—is fair consideration for a payment by the debtor subsequent to his insolvency. Sections 3, 9(1). Section 70, sub. d, along with § 67 of the Bankruptcy Act, 11 U.S.C.A. § 107, dealing with fraudulent transfers, serves much the same function in the overall scheme of federal bankruptcy law as the Uniform Act does under state law. Use of the phrase "present fair equivalent value" in § 70, sub. d(1) and in § 67, sub. d(6) serves to prevent any misunderstanding of Congress' intention to proscribe liquidation of an antecedent debt as good consideration under the federal act. See 4 Collier, Bankruptcy 420 (14th Ed. 1942). It is clear from the purposes of § 70, sub. d that it does not afford protection to the payment of an antecedent debt by the bankrupt, since validation of such payments would not increase the ability of the bankrupt to carry on everyday business transactions during the pendency of the petition, see In re Scranton Knitting Mills, Inc., D.C.M.D.Pa.1937, 21 F.Supp. 227, and would deplete the assets of the estate available for other creditors. But there is no reason to read "present" so narrowly as to exclude from the protection of § 70, sub. d not only liquidation of antecedent debts but all transactions in which consideration does not pass simultaneously from both parties. It is true, as the trustee points out, that the section must be read so as to afford protection only to those transactions coming strictly within its terms, Kohn v. Myers, 2 Cir., 1959, 266 F.2d 353, 357, but at the same time we should not lose sight of the statutory purpose.

The trustee also urges that services cannot constitute "value" within the meaning of § 70, sub. d(1). Such a view, in accord with that apparently taken in In the Matter of Autocue Sales & Distributing Corp., D.C.S.D.N.Y.1958, 167 F.Supp. 672, 674, must be premised on the assumption that the statute protects only those transactions which result in an immediate balance sheet increase in the assets of the debtor equal to the consideration paid out by him. We think that this is too circumscribed an interpretation of the statute; in our view it applies equally to transactions involving services. While it is true that the work performed by an attorney or an accountant or any other person rendering services is not directly reflected in the balance sheet in the same way that the purchase of stock in trade or a new machine would be shown in the inventory or fixed assets accounts, it can hardly be doubted that such services may be equally necessary to the debtor and may equally aid in the protection of the assets available for creditors in the event the bankruptcy petition should be approved. Moreover, insofar as the purpose of the section is to permit the bankrupt to carry on his day to day business affairs during the pendency of a petition, no rational distinction can be drawn between the use of services and the purchase of tangible property. One is as likely to be as necessary to the carrying on of the debtor's affairs as the other. In the present case, representation of the corporation in grievance arbitration with its employees was quite as necessary to its continuing business as the purchase of gasoline to run its buses. Furthermore, the record suggests that the corporation was substantially benefited by Kass' services.

We believe the view we take of the statute to be in accord with the statutory history and the intent of Congress. Until the passage of the Chandler Act in 1938, great uncertainty existed as to the circumstances in which transactions

occurring during the pendency of a petition would be accorded protection against a suit by the trustee. See MacLachlan, supra, at 614–16. The statute was intended to make certain that a consistent course would be followed by the courts, not to narrow or expand the class of protected transactions already carved out by judicial decisions. See Analysis of H.R. 12889, supra, at 229–30. Under the authorities existing at the time of the Chandler Act no distinction was recognized between transactions involving services and those involving tangible property. See In re Latex Drilling Co., D.C.W.D.La.1926, 11 F.2d 373; Quinn v. Union National Bank, 8 Cir., 1929, 32 F.2d 762, 770; 3 Remington, Bankruptcy 272 (1957) and cases cited at n. 16. There is no suggestion in the legislative history that Congress intended to alter the judicially developed law on this point, see Analysis of H.R. 12889, supra, at 229–30. In fact, there is persuasive reason in the phrasing of § 63, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. b, passed simultaneously with § 70, sub. d, to believe that Congress intended the language of § 70, sub. d(1) to encompass service transactions. Section 63, sub. b provides a narrow exception to the principle that claims to be provable must have been in existence at the date when the petition in bankruptcy was filed. It provides that claims arising during the pendency of a petition "in favor of a creditor by reason of property transferred or services rendered by the creditor to the bankrupt * * * shall be provable to the extent of the value of such property or services." Both this provision and § 70, sub. d have as their purpose the protection of persons doing business with the bankrupt in good faith during the pendency of a petition. See Weinstein, The Bankruptcy Law of 1938, 133 (1938). They differ only in that in § 63, sub. b transactions payment has not yet been made by the bankrupt at the time the petition

is approved. See 3 Collier, Bankruptcy 1913–14 (14th Ed. 1942). It is most probable that Congress intended the two provisions to apply to the same types of transactions; we know of no reason why § 63, sub. b should extend to service transactions and § 70, sub. d not. The unmistakable words of § 63, sub. b are strong evidence that the term "value" in § 70, sub. d was meant to include services as well as tangible property.

■ The district court, viewing the case as it did, had no occasion to pass upon the question whether Kass was a person acting in "good faith" within the meaning of § 70, sub. d(1) of the Act. Therefore, we must remand the case to the district court for a determination of this question. Among other matters, the court should consider whether Kass knew of the petition filed against the Third Avenue Transit Corporation and whether he had reasonable cause to believe that the petition was not well founded. At the same time the district court should inquire into what part of the fee paid Kass was for services performed between the filing of the petition in bankruptcy and its approval, since it is clear from the record that Kass' employment antedated the time of filing of the petition and it also appears possible that some of his services may have been performed after the approval of the petition. Section 70, sub. d by its terms is inapplicable to transactions prior to the filing of the petition and after its approval.

■ The appellant also contends that the district court was in error in awarding the trustee interest from the date his fee was paid, June 17, 1949. This contention is without merit. If the district court concludes upon remand that any part of Kass' fee should be returned to the trustee, interest may be awarded from the date of receipt of such part of the fee.

Reversed and remanded.